The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armand presiding. Good afternoon, counsel. Our next case is 4-22-0070, People of the State of Illinois v. Omari McNabb. Could counsel for the appellant please state your name for the record? Yes, good afternoon. Attorney Sarah Garber and attorney Sam Adam Jr. representing the appellant Omari McNabb. Thank you. And Ms. Garber, it's my understanding that you'll be doing the arguing today? Yes, your honor. Okay. And counsel for the appellate, could you please state your name for the record? Your honor, Katrina Kuhn for the People of the State of Illinois. Thank you. Counsel for the appellant, you may proceed. Thank you. May it please the court and counsel. Thank you. Omari McNabb was convicted of murder under the theory of accountability based on entirely circumstantial evidence. And that is a tall order. This was not a close case. Scott Allen was already deemed to be the shooter of the bullet that killed Juan Nash. Scott Allen was seen with a gun. He was seen firing it at Nash. And although McNabb was a party, he was there along with 25 to 30 other people. He was never seen with a gun in this case at any time prior to the shooting. He was never seen firing a gun by a witness on scene. There was no forensic evidence linking McNabb to the shooting. He was not found with a weapon after the fact. There was no gunshot residue identified on his clothing or his person. And when he was with police, this was not a close case. Because of this, the state had to try to build a case based on inflammatory circumstantial evidence. And the evidence that we contend was particularly inflammatory in this case were three items. One, a jacket with a bullet hole that the state contended, evidence of gang membership, and internet search history for a .38 pistol. These pieces of evidence, we contend, were wholly lacking in foundation and highly prejudicial. Although the state proper... Good afternoon. With respect to the gang membership evidence, you contend in your brief that the evidence at trial really was insufficient to establish that the defendant was a member of a gang. But how is your argument consistent with all the photographs of the defendant, with the video recordings of the defendant flashing the FBMG200 gang signs? How is it consistent? That's a good question. Thank you, Judge. So our position is that both the state's expert and the defense expert on gangs testified that people can be associated with gangs, they can be friends with gang members, and that they can still not be in the gang. That it is not uncommon in rap videos and other social media activity for people to show support for gangs or if they have friends that are in gangs to do things like Your Honor is mentioning and not be in the gang. And although the state's expert testified that those who associate with the gang can be differentiated because they're not involved in criminal activity, he then went on to say that it was his view that Amari McNabb was in the gang based on those social media posts. However, it's our position that there is no significant evidence of his involvement in gang activity with these individuals, and that the state's expert merely establishes that he was an associate of the gang and friends with gang members. First, you know, more importantly, the case law is very clear that even if you were to be in a gang, and even if this were a gang shooting, that that's not enough for his conviction, that there has to be evidence that supports admissibility of gang testimony that ties him to the crime that the gang evidence has to be relevant to the crime. In this case, as we argued in our brief, there was absolutely no evidence put on by the state that this that Mr. McNabb was in a gang or that this was a gang shooting. In fact, the brother of the victim Hopkins testified that he's known McNabb since he was a kid that they that he did not believe him to be in the gang that he did not have any beef with McNabb that he did not believe there was any beef with him or his brother or that this was a gang related shooting. The state called numerous additional witnesses that civilian witnesses who were present at the party who knew the individuals involved and they all testified that they did not know McNabb to be in a gang even though they had grown up knowing him and that they did not believe that there was beef at this party. They had no advanced warning that there was something that was going to take place and that this did not appear to be a gang shooting. And more than a gang membership, there was also the defendant's internet search history that was admitted here as well and that tied with the gang evidence together with the evidence of certainly the jacket providing additional evidence for the conclusion that the defendant at least was accountable for the isn't that correct? I would say no, your honor. The jacket is just was the evidence about the jacket and the bullet hole we contend was utterly lacking in foundation. The state argued in pre-trial motions that they were going to admit these photos of the jacket to establish McNabb's identity because they said it was this distinctive jacket and that this was needed to show that he was present. When it came time for trial, that was not the case at all. The state was not using the jacket to establish his identity. His identity was simply not disputed. He was identified by multiple people. He admitted to police as being there. He was seen on video in the same jacket at the hospital on body-worn camera. He came to the police station twice in the same jacket. Police did not test it for gunshot residue. Then on the ninth day after the shooting when he was arrested, the police collected the jacket as evidence. They noticed a small hole in the jacket. There was absolutely nothing to suggest that this was anything other than a hole. People get holes in their jacket. There was nothing distinct. There was nothing distinctive about it as being a bullet hole. The state called numerous police witnesses, forensic experts, and other witnesses. None of them, not a single one of them testified at the trial that this was a bullet hole. It was simply a photo shown to the jury with an exhibit marker and a bullet trajectory rod through the hole. Then in closing argument, the state used that photo to argue. Not only was this a bullet hole, but this was a bullet hole indicating that McNabb was shot on the day of the crime in self-defense by Nash. None of that was borne out by the evidence. It was pure fiction. The admissibility of the jacket is separate from the inferences that the state could draw from that hole, isn't that correct, based on the surrounding facts? It wasn't necessarily an abusive discretion for the trial court to admit the jacket with the hole in it, was it? The jacket itself, I agree. It was the way the jacket was depicted in the photo with a trajectory rod sticking through it, which suggested very clearly to the jury that this was a bullet hole. The state used that to argue in contravention to the factual evidence that this was evidence of the shooting on the day of the shooting. McNabb had not been... I'm sorry, judge, go ahead. Well, but the jury wasn't confused at all by that because they found that the defendant did not personally discharge a firearm. So even if this were error, certainly it would be harmless error, isn't that right? I do not agree. It's clear that evidence of unrelated gun activity, shootings, bullet holes, these are inflammatory pieces of evidence. This was not a close case. So admitting evidence that McNabb had a bullet hole in his jacket and that he was potentially shot by the victim in self-defense, even if the jury found he himself had not fired the weapon that killed the victim, does not mean that they were not prejudiced by the admission of this very prejudicial evidence. It was clear that Allen fired the shot that killed Juan Nash. That was established. But counsel, you've already admitted that it was clear your client was there at the of the shooting and therefore his jacket could have been clipped by a bullet, right? He was there at the time of the shooting. However, in our view, the fact that his jacket potentially was shot during the shooting for which there was no factual basis whatsoever would put him involved in the altercation. And certainly the state made that argument to the jury based on this photo evidence. The nature of this photo evidence, it was very prejudicial. It wasn't simply he was a bystander and there wasn't there evidence that other people not involved were shot as well. At least one other person. Yes, other people were shot and there was evidence of the fact that those people had weapons and they were not, you know, charged in this case. Mr. McNabb was charged with first degree murder based on the theory of accountability with circumstantial evidence. When you consider the jury is considering that these additional pieces of inflammatory evidence are significant, suggesting that. Let me slow you down here a second. You began your remarks a minute ago by saying that your client was cooperative with the police, but isn't it in fact true that your client first lied to the police and then with presented evidence of a video where he had gone to the hospital, changed his version of what happened on the date of the incident, correct or not? That what you're saying is true. In my view, that doesn't mean that he didn't cooperate with police. There's multiple accounts from officers that he first spoke to them off scene. Then he went to the station being untruthful counsel being untruthful with the police is not cooperating with the police. Would you agree with that? I agree. And he did admit to the police that he was on the scene of the shooting. And then he did indicate at first, you're right, that he was not at the hospital. However, then he did admit to being at the hospital. I don't think that that suggests that his involvement at the shooting is anything different than his being present at the party and him not wanting and wanting to distance himself from the fact that a shooting did occur. I think it's understandable that sometimes people do that when they speak to the police. But you're right, that is part of the evidence. You know, our position is that not a single witness testified at trial that this was in fact a bullet hole. There was no expert testimony about trajectory. And yet brought out count. May I ask a question? Yes, of course. That fact brought out by defense counsel. Yes, it was. It was not to hear. The jury got to hear all of the attacks on the weight to be given the evidence of the whole jacket. Did they not? The defense counsel did object repeatedly to the jacket. However, the jacket was still shown to the with an evidence marker and a trajectory rod sticking. Well, did the police witness also acknowledge either on direct or cross that the rod was simply to show that there was a through and through hole? It wasn't indicative of anything else. The police did not. The police officer did not say that he had direct evidence of it being a bullet hole. However, that is our point that the state's argument was lacking in foundation and that that photo the way it was depicted was Zenoff's point that the admissibility of the jacket really wasn't in question. The jacket was admissible. It was clearly the jacket he wore. The state gets to decide how much evidence they want to present to identify the defendant. The defense doesn't get to say, wait a minute, we think that there was already enough. So you didn't need the jacket for identification. So the state gets to establish that, okay, this is the jacket he wore and you can tell by seeing the video, et cetera. So we get the admissibility part. Then it becomes a question of the weight to be given the issue of the hole. And I guess my point is if the jury got to hear all of the weaknesses having to do with the hole, then isn't that a fact question for them to decide as to how weight they want to get that. What I would say, your honor, is that not a single other piece of clothing in this case was presented in this manner. Clothing was presented for identification as it normally is as clothing. It was not presented. Answer the question. The question was, if the jury got to hear all of the weaknesses in the inference being sought to be made by the state, then why isn't that a fact question that they are entitled to make? And that's not really within our purview now to reassess their weight in giving that evidence, what weight they chose or what weight they decided not to give. I don't agree, your honor, respectfully, because this is the purpose of 403 is to say that not a jury can't hear everything and decide the facts. There was no factual basis to support that this was a bullet hole and it was inflammatory that it was suggested that it was. In that case, the courts say that under 401 and 403, there can be an analysis done by the appellate court to say this was simply too prejudicial to go to the jury, particularly in a case like this when it was circumstantial to begin with and not a close case. And the state had very little evidence connecting Mr. McNabb to this crime. And then to be able to use this inflammatory photo, we believe was prejudicial to the jury and is appropriate for consideration by your honors. In addition to the gang evidence and the jacket, your honor mentioned the search history on the phone. We also contend that this was improperly admitted at trial. There were numerous shell casings found on scene, 14 nine millimeters from the victim himself who was found armed two from the 25 caliber belonging to Allen, which matched the fatal bullets. And then four from a 38 caliber weapon, which is that issue here in our brief. 38 caliber fragments were found in the victim's arm, but they were not able to connect those casings to the shells found on scene. And there was evidence that there was a shooting recently in the area indicating that it's possible that the casings found on scene that were 38s were not connected to the shooting. The state. So excuse me for interrupting. We're running out of time and there is another important issue that I had a question about, and that has to do with the jury instruction. And the jury instruction that was given is the IPI criminal 5.03. And in that instruction, um, the jury hears that the defendant was accountable if he intended to promote or facilitate, uh, the commission of an offense. And he knowingly solicited aided, abetted, agreed to aid or attempted to aid another in the planning or commission of an offense. Now, is it not encompassed within that instruction that the mere presence at the scene of a crime is not enough to prove accountability? Your honor, I would say, no, it's not enough. And the reason is, you know, the same, what I would say is the reason the legislature found to include the language in the amended language on accountability in the statute where they did add to the end that mere presence is not enough. And that's because accountability is a, I apologize, judge. And what they were doing when they did that was just to codify the well-established case law. Isn't that what this amendment amounted to? Yes. And it's my understanding that that's also what the jury instructions are to do is to cut, is to make clear the full and complete state of the law. And that is why modified instructions can be given when appropriate. But this did not, this amendment did not change the state of the law, which was embodied in 5.03, which I just read to you. Was it not? The statute itself did not change the common law that had already established mere presence is not enough. That is correct. And that is encompassed. I guess I want to, I believe that's encompassed in 5.03, which is done what the case law was. Our position is that it is essential that this language about mere presence, not being enough is considered in cases, particularly like the case involving Mr. McNabb for first of all, it is an accurate statement of the law. And it is a complete statement of the law, which is not encompassed in the jury instruction as is particularly because accountability is such a difficult way to find someone guilty of first degree murder. This is someone who was not directly involved. And then on top of that, you have a case like Mr. McNabb, which was based on very circumstantial evidence. Additionally, the jury issued a jury question where they were struggling with what, whether they had to hold Mr. McNabb guilty for the response for the actions of another person. And this is what happens in accountability cases, which is why the legislator added this language and why I added the removing sort of this evidence that we contend is improperly admitted. The evidence was that Mr. McNabb was merely present on scene and friends with the individuals. And if you believe the state's gang expert, which I contend there was no, you know, it was not sufficient factual support for that he was in a gang, but those things under the law are not enough. And in a serious case like this involving the charge of murder, the jury needs to be instructed that mere presence is not enough, which is why we made that argument and believe that the current jury instruction given was not sufficient. With respect to the issue of the racial composition of the veneer, there was no objection made at the trial court contemporaneously with the veneer and with the seating of the jury was there. That's correct. And the record contains absolutely no evidence whatsoever regarding the racial composition of defendant's jury, the composition, the racial composition of the veneer, McLean County's process for selecting jury pools. So without all of that information and an objection being made at the time, how can we possibly evaluate your client's constitutional rights? I certainly understand and appreciate what your honor is saying. You know, it was my understanding based on speaking with the prior counsel at trial that it wasn't all white veneer. And although he didn't object, you know, we contend that it was a constitutional issue. It's my understanding the appellate court can remand cases down for further evidentiary hearing if there is not enough there to evaluate the issue. And we wanted to be sure to preserve the issue for any future opportunity to explore this further. Of course, we are bound by the record that exists at this point and certainly understand your honor's question. And if there's no other question, I would just ask your honors to please reverse Mr. McNabb's conviction and find that the evidence admitted against him, either all three pieces or even one of them, which we contend would be sufficient enough to warrant him a new trial. Thank you. All right. Thank you, counsel, counsel for the appellate. You may proceed. Good afternoon, your honors. Katrina Kuhn for the people of the state of Illinois. May it please the court. I agree with counsel on one point. This is not a closed case. Defendant actively participated in the murder of Juan Nash. I will review for your honors his acts before, during and after this crime. All of those acts considered as a whole in their entirety established his shared criminal intent of his fellow gang members. First, days before the shooting, as your honors have noted, there were posts made to social media talking about gang affiliations. A YouTube video that had been made several weeks earlier was posted three days before this offense, referring to targeting opposing gangs and catching gang members out in public and showing no mercy. Defendant was proudly and affirmatively proclaiming his gang affiliation in these posts, throwing gang signs, wearing a shirt memorializing a slain member of his gang. So that is some of the context of the days before the shooting. 18 hours before the shooting, as your honors have noted, there were searches on this defendant's four searches for a 380 pistol, which is one of the two types of bullets recovered from the scene. And two hours before the shooting, this group, the group of defendant and his gang compatriots saw this victim on a Facebook live video at this party. And so they saw the opportunity to carry out their plan. They didn't just happen to go to the party and he was there. They went to the party to after they saw that the victim was there. Defendant went there with Alan and a bear and walls. Walls had a fanny pack with a gun in it. The party was dropped off in two cars and defendant waited for the people in the second car to arrive before he proceeded to the party. Defendant actually spoke to the victim while Alan was standing nearby. And they were clearly speaking about the motive for this crime, which was the previous shooting of Mr. Kirkwood by Nash's brother. Nash's heard telling defendant, quote, keep my brother out of this. Defendant and Alan then walked away together. The group of four then went to the bowling alley to make their plan. Alan and Walls had fanny packs on. They are seen in the video wearing fanny packs, which were described to have been the way they used to carry guns. Defendant and Alan were talking on cell phones. And one of those calls involved defendant speaking to Shondell Wright, his friend Shondell Wright, telling him to, quote, unquote, move around. And Wright thought that that meant that something was going to be happening, you know, in short order at the party. Shondell. Yes. May I interrupt for a moment, please, to follow up on some of the questions that were asked of opposing counsel. If we want to focus for a minute on the gang evidence, opposing counsel contended that there really wasn't enough of an evidentiary basis to link this defendant to a gang and that certainly the expert testimony wasn't sufficient in and of itself. And rely on people versus Smith, an Illinois Supreme Court case in support of their argument that the gang evidence was improperly admitted. Why should we not look at Smith as a reason that the trial court abused its discretion in admitting this evidence? Is that case distinguishable in any way? Your Honor, I believe I discussed Smith and my brief on page 24. Smith talks about how gang evidence can be admissible to provide an explanation for an otherwise inexplicable act, such as a shooting of a person at a party when there was no apparent, you know, scuffle or apparent physical confrontation. It can be used to explain, excuse me, explain the reason that a Smith, I believe that the Supreme Court noted that there was testimony that this, the defendant in Smith was in the presence of a gang leader at one time. There was very isolated gang evidence in Smith. Here, as I pointed out in my brief, and as I point out to your honors, there was voluminous evidence of defendant's participation agreement, participation agreement, acceptance, and his aiding and abetting of these particular gang activities. This defendant facilitated the weapons. He did a phone search. He spoke to the victim and referred to this prior shooting between the gangs. He made the threat to the victim. He distracted the victim with the actual facts of this particular shooting. This defendant stood in front of the victim when Allen was shooting him and was, again, you know, acting as a distraction. The victim, defendant then got back in the car with Allen and Walls, and the defendant then left with the victims and went, went, dropped Allen off at the hospital and was later seen, you know, within a couple of hours, seen with a bear in a neighborhood banging on where it had been reported that people were banging on doors and, and talking about guns. Defendant, as, as your honor has noted, defendant then lied to investigators in the interview, initially saying he didn't even know anything about the shooting. And then after he was caught and told that they were seen on video, he admitted, then he starts to admit that they brought Allen to the hospital. It was with Allen when the shots were fired. And so in Smith, the gang evidence really wasn't the court found tied at all to the defendant. In that case, this involved the murder of an assistant warden in the prison system, and found that it was error to admit the victim's attitude towards gangs because the defendant was unaware of it. So while you're right, I think the court does talk about the importance of gang evidence to explain what otherwise might be inexplicable or unexplainable. The case is distinguishable, is it not, from the facts that we have here, which are, as you started to explain, the videos and all the media, which do tie the defendant specifically to a gang. He's showing gang signs. And there is also evidence of membership of an MMB gang, I believe. But there was evidence, he was a member of the rival gang. And again, they were arguing. Defendant actually, in his own statement to police, he said that Allen and Nash were enemies. And Nash was a member of a rival gang. And they had argued about the shooting of Allen Nash. Oh, I'm sorry. I thought you were under the question. I believe that the phrase was used here in the argument that there was no significant evidence or no significant gang activity. As I've spent the last few minutes recounting, there was significant evidence of gang activity. This continued even three weeks after the shooting. Defendant is proclaiming Snapchat and shouting gang language. Again, this showed defendant's participation and affiliation in this gang before, during, and after this offense. And your honors, the jury saw the YouTube videos and the evidence. And respectfully, your honors, this is not a retrial. As your honors have noted, this is not a case where the evidence is considered in isolation. One particular fact is not considered in isolation. And this is not a reweighting, an entire reweighting of the evidence. Let's, let's talk about another issue. And that is the hole in the defendant's jacket. Yes. Did there not need to be expert testimony about what this hole was in the defendant's jacket or how it got there for the state to have argued that the bullet hole was caused by Nash shooting the gun in self-defense? Wasn't that required? Well, well, your honor, to just to step back just one second. As, as, as the panel noted, I believe Justice DeArmond noted that in pretrial, the argument was that the, the jacket would, could be used for identification. Defendant was seen wearing a black puffy jacket on the video. And the trial court found that the jacket was relevant to identification. It was a relevant factor in terms of identification because the videos were a bit blurry and the court reasoned that the jury could make up its mind as to the, as to the, the whole issue, the issue of the hole. And clothing was obtained from all of the different suspects and the victim. And so with that in mind, when it came time for the evidence to be used at trial, you know, there was no testimony that it was a bullet hole and the detective described holes in the shirt that Alan was wearing at the time of the shooting. And, and as, as, as I pointed out in my brief, the defendant didn't dispute being at the scene of the shooting. In fact, the argument was that they were acting in self-defense and the hole actually supports defendant's self-defense claim that he was standing near Alan and the victim. So it's very difficult to see how defendant was prejudiced when this evidence actually supports his defense. Well, counsel, don't you think the prosecutor was overstepping a bit in light of what you just said about what the evidence did show in saying that this hole was caused by a bullet because there was no expert testimony to suggest that. Well, well, your honor, I, I don't believe that that argument was used to show that there was propensity of, as propensity or as to show that this defendant was in a lot of situations where bullet holes were being, bullets were being, you know, fired. I think it was directly tied to, you know, the facts of this case. It was not used as a general piece of evidence to, to, to, you know, to, to damn, you know, this particular defendant. Well, my point, I probably didn't make it very clear, is it seems like the prosecutor told the defendant, this is a bullet hole, but the evidence presented did not show that. And so to me, that suggests that the state may have overstepped a proper argument. No, am I wrong on that? I, I, I, your honor, I, I respectfully, you know, disagree. I, I think that there was testimony that the defendant was being shot at. I think it could be, you know, that it was in, in the, in the, in the context of, of a closing argument. I think that one or, you know, one errant statement, if you're, if you're, this court finds it to be, would not change, change the results in this case. Your, your honor. And you also mentioned earlier that Walls had a fanny pack with a gun in it. Um, it seems to me that maybe one witness did say that Walls fanny pack did have a gun in it. Am I right? Or yes, there, there is, there was testimony to that fact. I do cite it in my brief and I had just been looking at it before. Okay. Just to, just to clarify though, that, um, when that gun was seen, that was not at the time that they were at the bowling alley. Am I right? Um, the, the, Mr. Walls was seen with a fanny pack at the, at the bowling alley. You know, obviously we don't know whether a gun was, was, uh, was in that particular fanny pack when he was wearing it. I don't believe that the two guns used in this offense were ever recovered. Is that, is that your answer? Is that your question? Well, I was just saying that, uh, I think the witness said at one time Walls had a fanny pack with a gun in it, but that particular time when the gun was seen was not when they were at the bowling alley. That's what I was trying to establish. I believe that that was, uh, that testimony was talking about, um, the first time that the group went to the party. I believe that was discussing, um, the, the two, you know, the two hours before the shooting or, or the hour before the shooting when they, the group first arrived at the party. Am I correct that Walls was never charged with any offense from this incident? I did not. I do not believe that he was, I don't have that in my brief. Um, uh, let me see if I'm not sure how I'm doing on time. Um, well, there's, well, you don't have too much time left, but I'd like to move to the jury instruction please. Counsel, do you agree that it is an accurate statement of the law that mere presence at the scene of a crime is not enough to prove accountability? I, I, I do agree because I think that what, what the case law says is that presence flight continued association with the gang members or associates and a failure to report are several factors that can be considered, um, in terms of accountability as for the, so when, so when the, um, statute was amended in 2010, why wouldn't it have been appropriate for the trial court to specifically instruct the jury as to the state of the law? Because juries are instructed because it was not the, the, the, the pattern instruction has not been your honor. Okay. But then the trial court certainly has discretion to go ahead and allow a non-pattern instruction of that reflects the current state of the law. Isn't that right? Yes. Yes, your honor. And, and, and, you know, defendant pointed out or your honor asked about the jury question, um, you know, defendant defense counsel agreed that there should be no response to the jury question and, um, basically agree that the jury was correctly instructed. So defendant hasn't not raised any, any real, um, you know, question on that point. Um, and again, as you, as your honor, I'm sorry, counsel, I didn't understand your last remark. Would you mind repeating it, please? I apologize. Um, could you repeat your question? Well, my question was, if the legislative amendment in 2010 reflected the correct state of the law, why shouldn't the trial court have allowed a modified instruction to specifically instruct the jury as to that, that mere presence that the words mere presence at the scene of a crime is not enough to prove accountability. And if they didn't, if the trial court didn't, why was it not an abuse of discretion? Because the trial court, you know, again, the, the jury instructions have not been, have not been modified to, to reflect that. Um, and the fact that, you know, the facts here, you know, this was not a case where we only, where the jury only had evidence of mere presence. So this, this is not a case where the jury had to, had to weigh a situation where the defendant was quote unquote, merely present. There are, there are many other facts and circumstances as, as the people have pointed out that, um, would make that what that would give the jury, give the court discretion to consider in this particular case, that, that modification or that giving of a non-pattern instruction would not be warranted. Um, and are there any other questions I can, I may answer for your honors? I see none. Uh, your honors, just if I may conclude, um, you know, again, the evidence in this case was voluminous. Defendant was convicted, not based on, uh, one single ruling or one single piece of evidence. It was based on the overall evidence establishing his guilt. For those reasons, the people ask that your honors reject all the arguments raised on appeal and affirm defendant's conviction. Thank you, counsel. Thank you. Ms. Garber, rebuttal. Thank you, your honors. Um, simply being in a gang, if that is established by the state is not enough, it's not enough to be in a gang or for this to be a rivalry between the gangs. The evidence has to show that McNabb's gang involvement had some relevance to some fact to make some facts more likely true than not. He was present. He was friends with these individuals and he was associated with those part of a gang. That evidence is deemed prejudicial unless it can come, it can go to any specific fact here. The gang expert relied upon by the state did not establish anything other than what his view was, was that Mr. McNabb was in a gang and that there was generalized beef between the two gangs. Not that this was specifically a gang shooting that McNabb had been involved in any planning or any assistance that would support guilt by accountability. The state suggestion that social media posts were being made simply go to whether he was or was not in the gang. But the courts make clear that that is not enough on its own right. One cannot be convicted based on being in a gang. And that's what we contend was done here is that that jury was heavily prejudiced by the testimony by this gang expert, that gangs are dangerous, that this is a hybrid gang and that, you know, this was a gang beef that this then led them to that McNabb was in more involved in the gang involved in the shooting than was actually established by the evidence. And the state's expert himself established that hybrid gangs, like the gang he contends were involved, were not organized. They did not plan and that crimes that took place were spontaneous. The evidence in this case supported that this was a spontaneous shooting that took place between Nash and Allen, regardless of who shot first. No one identified Mr. McNabb with a gun, with a fanny pack as being involved in shooting. And there was no evidence that he was found with a weapon. So the state relied upon this evidence of purported gang involvement, and they relied upon the search history, which is, you know, we contend in the brief was not necessarily connected to the shooting because it was not established that a 38 was the other weapon that was fired. The state's expert testified it could have been a 357, a 38, or a nine millimeter. The court excluded other evidence of other gang, I'm sorry, other weapons because it was too prejudicial. And yet the state was able to argue at trial that these searches were relevant to McNabb's intent. However, the evidence did not even establish that McNabb made the searches as the witnesses testified that Herbert, who was found with a 38, actually was using McNabb's phone on the day of the shooting. So there was not sufficient factual support to allow the admission of the searches. And additionally, it was highly prejudicial. And then we've already discussed the jacket as well. Our position is that- Counsel, excuse me, in your- Of course. I don't know that we touched on this to any great extent earlier, but you also challenge in general, the sufficiency of the evidence. And in your brief, you rely on a case people versus right, 43 Illinois appellate third 458 in 1976 case, which applied the reasonable hypothesis of innocent standard. That standard is no longer the law in Illinois, has not been for 40 years. The standard is the Collins Jackson standard. How does that affect your sufficiency of the evidence argument? Understood. We contend that the evidence, even with the improperly admitted evidence that we can find was improperly admitted, was not sufficient to find him guilty for the reasons that we've said, that the gang evidence did not point to his actual involvement in this crime, that the search history did not point to his actual involvement in this crime. The standard is we have to view, the court considers whether viewing the evidence in the light most favorable to the people, that is the state of Illinois, any rational, any rational trier effect could have found the essential elements of the crime beyond a reasonable doubt. That's the lens with which we have to look at this. Is it not? It is. You're correct. And I understand. And of course, our main argument is that these improperly admitted pieces of evidence, prejudice Mr. McNabb's ability to receive a fair trial. However, we also do contend that even in the light, most favorable to the state, that that evidence was insufficient to prove guilt beyond a reasonable doubt. And we would ask that your honor find that the evidence was admitted improperly in this case, at least one, if not all three, as we contend, and that this deprived McNabb of a fair trial, given the closeness of this case and the circumstantial nature of it. Thank you. Thank you. All right. Thank you, counsel. Court will take this matter under advisement. The court stands in recess.